UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 09-10093-RGS

UNITED STATES OF AMERICA

v.

EDSON MIRANDA

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO VACATE JUDGMENT

August 26, 2015

STEARNS, D. J.

Petitioner Edson Miranda moves to set aside his conviction and vacate his guilty plea pursuant to 28 U.S.C. § 2255. Miranda alleges that the well-documented misconduct of former state chemist Annie Dookhan rendered his plea involuntary in violation of the Due Process Clause of the Fifth Amendment. For the reasons stated below, Miranda's motion will be denied.

BACKGROUND

On December 18, 2008, at around 6:30 in the morning, Massachusetts State Troopers executed a no-knock search warrant for 89 Highland Street in Brockton, Massachusetts. When officers entered the basement apartment of the home, they found Miranda and Christine Teixeira together in bed. They also found various bags of substances the officers believed to be crack

cocaine and marijuana, together with 20 white pills. The search additionally turned up $5,000 in cash, a scanner, and three scales. From the driveway of the home, the officers recovered 5 rounds of .40 caliber ammunition. Four exterior surveillance cameras were connected by wire feeds to monitors in the basement apartment.

The suspected drugs were submitted to the Massachusetts Department of Public Health Laboratory in Jamaica Plain, Massachusetts (Hinton Lab) for testing. Tests conducted at the Hinton Lab identified the substances as cocaine base (with a total weight of 8.44 grams), marijuana, and 20 tablets of Oxycodone. Multiple tests were performed on the cocaine base: two bags were tested on February 20, 2009, while the third bag was tested on February 24, 2009. A drug certificate for each test was signed by Lisa Glazer, the principal examiner, and certified by Annie Dookhan.

Miranda was charged on April 1, 2009 in a two-count Indictment alleging a conspiracy to distribute cocaine base and possession with intent to distribute in excess of 5 grams of cocaine base. On October 13, 2009, Miranda pleaded guilty to both counts. At the plea colloquy, the court (the undersigned judge) asked the government to summarize the evidence in the case. At the conclusion of the prosecutor's statement of the facts, the court asked:

> All right, Mr. Miranda, just to briefly summarize, the government is prepared to prove that on December 18, 2008, in your apartment you had a little more than 8 grams of cocaine base; that you, in fact, had conspired with, that is worked with, a person whose name is not being mentioned now but who testified in front of the grand jury, who Ms. Sullivan characterized as a cooperating witness. That is the basis of the conspiracy. Essentially, do you agree that the government can prove each of the elements of these two offences?

Miranda answered, "Yes, your Honor." The court then asked: "And you agree that you are responsible for the crimes alleged in the indictment?" Miranda replied, "Yes." At a later sentencing hearing, after reviewing the Presentence Report (PSR), the court sentenced Miranda to 108 months imprisonment on each count, the sentences to be served concurrently.[1]

On August 30, 2012, the Hinton Lab was closed after it was revealed that Dookhan had engaged in wide-ranging official misconduct that had potentially compromised the results in thousands of drug tests.[2] Miranda now alleges that the government's failure to inform him of Dookhan's misconduct rendered his plea involuntary. In the interim, the drugs

---

[1] The government highlights the statement in the PSR that Miranda "was affiliated with a gang in the city of Brockton that is well known for violence and narcotic distribution activities." Opp'n at 11. Miranda was classified by the PSR as a career offender. In exchange for the plea, the government agreed not to file an Information pursuant to 21 U.S.C. § 851. As a result, Miranda's advisory guidelines range was substantially reduced.

[2] Dookhan ultimately pleaded guilty to twenty-seven counts of official malfeasance and was sentenced to a term in state prison.

confiscated in Miranda's apartment were retested at the State Police Crime Laboratory in Sudbury, Massachusetts. On October 15, 2014, the retesting confirmed that the substance in each of the bags was cocaine base.

## DISCUSSION

Section 2255 allows post-c0nviction relief when there is a constitutional defect in a petitioner's sentencing. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). To earn relief from a sentence imposed after a plea of guilty, a defendant must "show that the plea proceedings were marred by a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Carrington*, 96 F.3d 1, 5 (1st Cir. 1996). Although this opening for a collateral attack is "narrow," it is "not necessarily a dead end." A petitioner can prevail "'on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea.'" *Wilkins v. United States*, 754 F.3d 24, 28 (1st Cir. 2014), quoting *Ferrara v. United States*, 456 F.3d 278, 289 (1st Cir. 2006).

Miranda moves to vacate his guilty plea claiming that the government's failure to disclose the full extent of Dookhan's misconduct rendered his plea involuntary under *Brady v. United States*, 397 U.S. 742 (1970), and that his

due process rights were violated pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). He argues that had he been aware of Dookhan's misconduct at the time he entered his plea, he would have rejected a plea and proceeded to trial. While section 2255 cases based on Dookhan's misconduct are many, the legal arguments raised are much the same (although varying in intensity in inverse proportion to the degree to which Dookhan was involved in the analysis of the drugs at issue).

Under First Circuit law, to establish that his plea was not voluntary, Miranda must demonstrate (1) "that some egregiously impermissible conduct (say, threats, blatant misrepresentations, or untoward blandishments by government agents) antedated the entry of his plea," and (2) "that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." *Ferrara*, 456 F.3d at 290.

The First Circuit has left undecided the issue whether Dookhan's misconduct (and the resulting failure of prosecutors to notify defendants of misconduct of which, by its very nature, they could not have been aware) satisfies the "egregiously impermissible conduct" standard of first prong of the *Ferrara* test. *Wilkins*, 754 F.3d at 28. Instead, the First Circuit to date has focused on the second prong, whether but for Dookhan's misconduct a petitioner would not have pled guilty.

To satisfy this second-prong requirement, Miranda must demonstrate that there was "a reasonable probability that, but for [the misconduct], he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhard*, 474 U.S. 52, 59 (1985).  In this context, a reasonable probability is "a probability sufficient to undermine confidence in a belief that the petitioner would have entered a plea." *Ferrara*, 456 F.3d at 290.  This in turn depends "in large part on a prediction whether the evidence likely would have changed the outcome of the trial." *Hill*, 474 U.S. at 59.  In answering this question, the court is to use an "objective standard." *Wilkins*, 754 F.3d at 28.  "The elementary question is whether a reasonable defendant standing in the petitioner's shoes would likely have altered his decision to plead guilty had the prosecution made a clean breast of the evidence in its possession." *Ferrara*, 456 F.3d at 294.  The "[r]elevant factors include . . . whether the sequestered evidence would have detracted from the factual basis used to support the plea." *Id.* (citing *Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000)).

The facts in *Wilkins* "followed the pattern of a prototypical street corner drug buy," while this case involved the execution of a search warrant. Both cases, however, present significant circumstantial evidence supporting the government's claim that the substance at issue was cocaine. *Wilkins*, 754

F.3d at 29. The officers involved in executing the search warrant would testify that the substance seized in Miranda's apartment had a visual appearance consistent with cocaine base. The officers also found a number of "tools of the trade" of drug distribution, including baggies, scales, a pile of cash, a scanner, surveillance cameras, and ammunition. *United States v. Mojica-Baez*, 229 F.3d 292, 303 (1st Cir. 2000); *see also*, *United States v. Walters*, 904 F.2d 765, 769 (1st Cir. 1990) (evidence of access to guns and ammunition relevant in cocaine distribution conspiracy case); *United States v. Burgos*, 254 F.3d 8, 15 (1st Cir. 2001) ("Evidence of large sums of unexplained cash is relevant to demonstrating an individual's involvement in illegal drug activities").

Nor, as the government points out, are the original drug certificates without evidentiary value. Dookhan's is the second signature on both certificates, indicating that Glazer was the primary chemist. The Office of the Inspector General's report on the extent of Dookhan's misconduct found that there was "no evidence that Dookhan tampered with any drug samples assigned to another chemist even when she played a role in confirming another chemist's test results." *Investigation of the Drug Laboratory at the William A. Hinton Laboratory Institute 2002-2012*, Office of the Inspector General (March 4, 2014) (OIG Report), at 1. *See United States v. Gray*, 2015

WL 178450, at *2 (D. Mass. Jan. 14, 2015) (finding that Dookhan's role as a confirmatory analyst went to the weight the defendant would have given to possible impeachment evidence in deciding to plead guilty). Moreover, the government submits an affidavit from Glazer explaining that as the secondary chemist, Dookhan played only a minor role in the testing, the bulk of which was performed by Glazer herself. Gov't's Ex. 1 (Glazer Aff.). Moreover, as in *Wilkins* the substances in question have been retested, and the new results "set to rest any real doubt about the nature of the merchandize purveyed by the petitioner." *Id.* at 29.

*Ferrara* recognized that the "nondisclosure of powerful impeachment evidence" is "apt to skew the decision making of a defendant who is pondering whether to accept a plea agreement." 456 F.3d at 296. However, the impeachment evidence at issue in this case is hardly "powerful," given Glazer's availability as a witness, amounting at most to a questioning of whether Dookhan's involvement may have weakened the chain of custody of the drugs. (Glazer states in her affidavit that Dookhan had access to only a small vial of the total drugs which had been extracted for spectrometer testing, while Glazer retained the bulk of the drugs in her custody). Even without the certificates, a jury would be warranted in returning a verdict of guilty on both circumstantial evidence – the accumulation of tools of the

trade – and direct evidence – principally the testimony of the unidentified witness that (s)he conspired with Miranda to sell drugs.[3]

Finally, as in *Wilkins*, Miranda "admitted his factual guilt (including the nature of the contraband sold) in open court at the time he [made] his plea. This admission is entitled to significant (albeit not dispositive) weight when, as now, he seeks to vacate that plea through a collateral attack. And such an admission is especially compelling because the petitioner neither attempts to explain it away nor makes any assertion of factual innocence." 754 F.3d at 30 (internal citation omitted).

## ORDER

For the foregoing reasons Miranda's Motion is <u>DENIED</u>.

SO ORDERED.

---

[3] Miranda acknowledges that this unidentified witness was the girlfriend who was present at the time the search warrant was executed. He alleges that she "was likely a reluctant, if not unwilling, witness and certainly vulnerable on cross-examination." Def.'s Mot. at 4. Be this as it may, it was as true on the day Miranda pled guilty as it is today. Any alleged weaknesses in this or any other component of the government's case (he alleges – with a high degree of improbability – that the "tools of the trade" seized from the apartment were consistent with personal drug use) does not take on greater weight now that Miranda has learned of one previously undisclosed weakness in the government's case. Rather, the weight of all previously known weaknesses in the government's case were known to Miranda when he made the decision to plead guilty. Under the objective standard called for in *Wilkins* and *Ferrara*, Miranda's professed "extreme reluctance to plead guilty in the first place," does not change the analysis. Def.'s Mot. Ex. 3 ¶ 5 (Def.'s Aff.).

/s/ Richard G. Stearns
**UNITED STATES DISTRICT JUDGE**